## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO,

       Petitioner,

       v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

       Respondent,

———————————————————

OLIN CORPORATION, ET AL.,

       Intervenors.

No. 24-1151

CONSOLIDATED WITH NOS.
24-1185, 24-1182, 24-1202, 24-1237

## INTERVENOR'S MOTION FOR LEAVE
## TO SUBMIT A CORRECTED BRIEF

Olin Corp. ("Olin"), intervenor in support of petitioner, respectfully requests leave to submit a corrected reply brief, in the form attached as an exhibit. The grounds for this motion are as follows:

1. This case involves petitions challenging a rule issued by respondent Environmental Protection Agency ("EPA") under the Toxic Substances

Control Act. After no party opposed Olin's intervention in support of petitioner American Chemistry Council, the Court allowed such intervention. The Court also accepted an intervenor in support of EPA.

2. The Court subsequently issued a briefing order providing each group of petitioners (industry and labor) with 10,400 words for an opening brief, and Olin with 5,200 words. The order provided EPA with 20,800 words, and the intervenor supporting EPA with 9,100 words. For the replies, each intervenor received 5,200 words and Olin 2,600 words.

3. The parties are utilizing a joint deferred appendix. The Court's order had specified that final briefs will be due at the same time as the deferred appendix.

4. Olin timely submitted a reply brief containing 2,599 words. That reply brief erroneously omitted a section demarcating a summary of argument.

5. To comply with this Court's rules regarding the content of a reply brief, Olin has prepared the attached corrected brief. This brief contains no substantive changes. A paragraph has been moved to the beginning, before the argument, to serve as the summary of argument; and the brief now

includes headings demarcating the summary and then the argument itself. Because the result would have had 2,602 words, the corrected brief deletes two words from the body, with no change to the content of the argument.

6.  No party opposes this motion.  American Chemistry Council, Texas Chemistry Council, American Fuel & Petrochemical Manufacturers, and American Petroleum Institute consent to the motion.  EPA takes no position and does not intend to file a response.  United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, and Sierra Club also take no position.

7.  Accordingly, Olin asks the Court to allow the filing of a corrected reply brief in the form of the attached exhibit.

February 6, 2025                         Respectfully Submitted,

                                        */s/ Keith Bradley*
                                        KEITH BRADLEY
                                        KAYLA MARIE MENDEZ
                                        717 17th Street, Suite 1825
                                        Denver, CO 80202
                                        T: (303) 830-1776
                                        keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

KATHERINE WENNER
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
2550 M Street, NW
Washington, D.C. 20037
Tel: (202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for Olin Corporation*

## CERTIFICATE OF COMPLIANCE

This document complies with Fed. R. App. P. 27(d)(2)(A), because this document contains 311 words as determined by the word-count function of Microsoft Office 365, excluding the parts of the document exempted by Federal Rule of Appellate Procedure P. 32(f) and Circuit Rule 32(e)(1),

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure P. 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Office 365 in 14-point Vollkorn Font.

*/s/ Keith Bradley*
KEITH BRADLEY

# EXHIBIT A

Oral Argument Scheduled for March 21, 2025

No. 24-1151

# United States Court of Appeals
## for the District of Columbia Circuit

UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,
*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY,
*Respondent.*

Olin Corporation, et al.,
*Intervenors*

Consolidated with Case Nos.
24-1187, 24-1185, 24-1202, 24-1237

**PROOF REPLY BRIEF FOR INTERVENOR OLIN CORPORATION**

W. CAFFEY NORMAN

2550 M Street, NW

Washington, D.C. 20037

T: (202) 460-9495

caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

KEITH BRADLEY

KAYLA MARIE MENDEZ

717 17th Street, Suite 1825

Denver, CO 80202

T: (303) 830-1776

F: (303) 894-9239

keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD

2550 M Street, NW

Washington, DC 20037

KATHERINE WENNER

2000 Huntington Center

41 South High Street

Columbus, Ohio 43215

SQUIRE PATTON BOGGS (US) LLP

*Counsel for Olin Corporation*

# TABLE OF CONTENTS

                                                                               **Page**

ARGUMENT SUMMARY ........................................................................ 1

ARGUMENT ............................................................................................. 1

I.      TSCA risk determinations must be about particular activities. .............. 1

        A.     EPA's 6(a) authority depends on risk determinations about activities, not chemicals in isolation................................................. 1

        B.     Paragraph (b)(4)(A) calls for multiple evaluations of a given substance...................................................................................... 4

        C.     EPA's inferences from other provisions are ambivalent. ............. 6

II.     EPA's presumption against PPE is unlawful. ............................................ 10

III.    Including "overburdened communities" was unlawful. ........................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)................................................................ 10

*Am. Business Assoc. v. United States,*
    627 F.2d 525 (D.C. Cir. 1980)................................................ 14

*Gen. Elec. Co. v. Dep't of Com.,*
    128 F.3d 767 (D.C. Cir. 1997).......................................... 10, 11

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010)................................................................... 5

*Kansas Gas & Elec. Co. v. FERC,*
    758 F.2d 713 (D.C. Cir. 1985)................................................ 12

*Life Techs. Corp. v. Promega Corp.,*
    580 U.S. 140 (2017)................................................................. 5

*Maine Lobstermen's Assoc. v. Nat'l Marine Fisheries Serv.,*
    70 F.4th 582 (D.C. Cir. 2023).......................................... 12, 13

*Nat'l Assoc. of Mfrs. v. Dep't of Interior,*
    134 F.3d 1095 (D.C. Cir. 1998).............................................. 10

*Nat'l Mining Assoc. v. Dep't of Interior,*
    177 F.3d 1 (D.C. Cir. 1999).................................................... 13

*Nielsen v. Preap,*
    586 U.S. 392 (2019)................................................................. 5

*Sabre, Inc. v. Dep't of Transp.,*
    429 F.3d 1113 (D.C. Cir. 2005).............................................. 10

ii

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023) ............................................................................... 2

*U.S. Sugar Corp. v. EPA*,
    113 F.4th 984 (D.C. Cir. 2024) ......................................................... 8

**Statutes**

15 U.S.C. § 2602(4) ................................................................................. 3, 9

15 U.S.C. § 2605(i)(1) ................................................................................... 8

15 U.S.C. § 2605(i)(2) ................................................................................... 7

15 U.S.C. § 2605(a) .................................................................................. 1, 4

15 U.S.C. § 2605(c)(1) ................................................................................. 7

15 U.S.C. § 2617(a)(1)(B) ........................................................................... 9

**Regulations**

40 C.F.R. 702.33 ....................................................................................... 14

40 C.F.R. 702.39(e)(1) ............................................................................. 14

89 Fed. Reg. 37,028 (May 3, 2024) ...................................................... 12, 15

89 Fed. Reg. 39,254 (May 8, 2024) .......................................................... 3

## ARGUMENT SUMMARY

TSCA has two key passages mandating risk evaluations regarding chemical substances: the first sentences of subsections 6(a) and 6(b)(4)(A). Both clearly indicate there should be multiple determinations about a given chemical, corresponding to various activities involving it. EPA refuses to confront the actual text. Instead, it relies on inferences from other passages—provisions equally (sometimes more) consistent with Olin's interpretation.

## ARGUMENT

### I. TSCA RISK DETERMINATIONS MUST BE ABOUT PARTICULAR ACTIVITIES.

#### A. EPA's 6(a) authority depends on risk determinations about activities, not chemicals in isolation.

Subsection 6(a) says EPA can impose regulations for a substance only upon determining that "the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance ... presents an unreasonable risk." 15 U.S.C. § 2605(a). Olin-Br.10-11. That sentence structure calls unambiguously for a determination whether a given activity (manufacture, etc.) presents the risk. EPA offers no response—the silence is

1

deafening. Were there any sensible way to read this passage other than what Olin put forth, EPA would have surely presented it.

EPA says "a chemical's risk determination acts as a toll gate allowing a chemical to pass to risk management or not." Opp.54. That toll gate is the first sentence of subsection 6(a)—text EPA refuses to acknowledge. Explicit in that provision, the toll is a determination for the "manufacture" or some other activity, not for the substance itself. Once past the toll gate, EPA says it imposes regulatory requirements "to ensure the chemical substance 'no longer presents such risk.'" Opp.54 (quoting 15 U.S.C. § 2605(a)). "Such risk" clearly refers to the risk described in the first sentence; "[t]he word 'such' usually refers to something that has already been 'described,'" *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766 (2023). So EPA's authority is to prevent the unreasonable risk that triggered a 6(a) regulation, *i.e.*, a risk presented by a given activity.

Olin never suggested such authority was "unlimited." *Contra* Opp.54-55. Rather, as EPA agrees, 6(a) authority depends on the risk identified. Opp.54. If EPA deems a chemical an unreasonable risk, the "to the

extent necessary" authority could touch every activity involving it—even activities without unreasonable risks.  Litigation counsel asserts "the use-specific analysis of chemical exposures" "guides" the "calculus" of the regulation.  *Id.*  EPA's actual rule said the opposite:  The risk determination "has no bearing" on the 6(a) regulation.  Olin-Br.9 (quoting 89 Fed. Reg. 37,028, 37,036 (May 3, 2024)).

Regardless, EPA's interpretation clearly means EPA could regulate activities that do not pose risk, while the proper interpretation allows regulation only as necessary to address the unreasonable risk from a given activity.  EPA's methylene chloride rule illustrates the problem.  EPA found 47 activities with this chemical present unreasonable risk, and 6 do not.  Then, using the "whole chemical" interpretation, EPA imposed crushingly tight exposure limits across *all* activities.  89 Fed. Reg. 39,254, 39,255 (May 8, 2024) ("[A]ll TSCA conditions of use … are subject to this final rule.").

The definition of "conditions of use" lists "manufacture" and other activities.  15 U.S.C. § 2602(4).  EPA believes that list conveys only that EPA assesses a chemical's whole "lifecycle."  Opp.32.  By contrast, subsection 6(a)

3

includes additional words making clear it refers to specific activities, not a holistic "lifecycle." It asks about unreasonable risks from "manufacture," etc., but also from "any combination of such activities." 15 U.S.C. § 2605(a). If (as EPA contends) the 2602(4) list already covers the whole "lifecycle," the "any combination" phrase is superfluous. Only Olin's interpretation gives meaning to these words: EPA can identify an unreasonable risk from a given activity or arising from a combination of activities.

### B.  Paragraph (b)(4)(A) calls for multiple evaluations of a given substance.

EPA insists the statute instructs it to "determine" a substance's risks. Opp.42. That claim ignores the literal text, which instructs EPA to "conduct risk evaluations" of a "substance." Olin-Br.12-13. "To determine" is the purpose of the evaluations, not the "operative clause," Opp.42.

EPA theorizes that plural "risk evaluations" refers to evaluations of multiple substances. Opp.48. That is not what paragraph (b)(4)(A) says. It does not mandate "risk evaluations of chemical substances." It mandates "risk evaluations," plural, for a "chemical substance," singular. "Text specifying" a

"plural, indicates that multiple" instances are intended, *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 149 (2017); the use of a "singular, not the plural" is equally informative, *see Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). The juxtaposition of singular and plural here must mean multiple evaluations for a single substance. "[T]he 'rules of grammar govern' statutory interpretation." *Nielsen v. Preap*, 586 U.S. 392, 408 (2019).

EPA rejects that commonplace understanding because other provisions refer to a single risk evaluation for a given substance. Opp.48. None of them contravenes the ordinary English meaning of paragraph (b)(4)(A). Paragraph (b)(3)(A) requires EPA to "initiate a risk evaluation" following a chemical's high-priority designation. There is no reason the first evaluation, triggered by the designation, would be the *only* evaluation. Paragraph (b)(3)(C) notes that EPA will be conducting risk evaluations, and specifies a follow-up task upon completion. Paragraphs (b)(4)(D), (F), and (G) describe parameters for conducting a risk evaluation. The singular "evaluation" simply means Congress was imposing requirements for each given evaluation. That does not imply an evaluation about a substance is the *only* one about the substance.

5

EPA says "evaluations" is used in the plural "only ... when discussing risk evaluation requirements under TSCA more broadly"—for which it cites just one example. Opp.48. Nonetheless, "evaluations" is plural in the most important sentence, the one mandating the evaluations; and that plural juxtaposes the singular "substance."

At the end of that sentence appears the phrase "under the conditions of use." EPA observes that phrase is consistent with a single, whole-chemical determination covering "all conditions of use." Opp.49. But EPA ignores a further textual clue: "Conditions of use" is plural in parallel with "evaluations," making it natural to read the sentence as calling for a risk evaluation corresponding to a condition of use. Olin-Br.13.

## C.   EPA's inferences from other provisions are ambivalent.

Unwilling to face the principal text governing its regulatory authority, EPA prefers to draw inferences from elsewhere. *E.g.*, Opp.43. Those other provisions are equally (or more) consistent with Olin's interpretation.

EPA thinks paragraph 6(c)(1) must mean determinations are on a whole-chemical basis because this provision refers to "determine[ing] that a

6

chemical substance presents an unreasonable risk." Opp.43. But it was not necessary for Congress to repeat, in so many words, a reference to the "conditions of use" for which determinations are made. Instead, paragraph (c)(1) specifies a determination "in accordance with subsection (b)(4)(A)." 15 U.S.C. § 2605(c)(1). Congress thereby incorporated the (b)(4)(A) terms, expressly directing multiple evaluations corresponding to various conditions of use. EPA's reading of TSCA gives this cross-reference no meaning.

Paragraph (i)(2) says a 6(a) rule is a final agency action, encompassing "the associated determination ... under subsection (b)(4)(A) that a chemical substance presents an unreasonable risk." 15 U.S.C. § 2605(i)(2). The determination "associated" with a 6(a) rule must be that an activity presents an unreasonable risk, because that is what section 6(a) requires. *Supra* 2. And, yet again, (i)(2) incorporates the (b)(4)(A) terms, making it unnecessary to repeat the phrase "conditions of use." That this paragraph refers to "the determination," singular, is unsurprising. "[T]he" associates the

determination with the 6(a) rule, and a given 6(a) rule would not—depending on scope—necessarily need more than one determination.

Paragraph (i)(1) says "a determination ... under subsection (b)(4)(A) that a chemical substance does not present an unreasonable risk" is also a reviewable action.  15 U.S.C. § 2605(i)(1).  This clause too incorporates the (b)(4)(A) terms.  That it refers to "a determination," singular, is simply because each determination about the risks from an activity would be "a determination" constituting a final action.  There could certainly be more than one determination; "the indefinite article 'a[]'" makes the provision "indeterminant," *see U.S. Sugar Corp. v. EPA*, 113 F.4th 984, 993 (D.C. Cir. 2024).  Section 18(a)(1)(B) then preempts state laws restricting "the manufacture, processing, or distribution in commerce or use of a chemical substance ... for which the determination described in [paragraph (i)(1)] is made."  Opp.44.  EPA concludes this means a single determination for each substance.  Actually, this provision expressly refers to determinations about activities, just like subsection (6)(A).  Furthermore, the preemption must be "consistent

with the scope of the risk evaluation," 15 U.S.C. § 2617(a)(1)(B)—and as noted paragraph (b)(4)(A) calls for multiple evaluations for a given substance.

Paragraph (b)(4)(D) tells EPA to provide notice about what "conditions of use" it "expects to consider" in each evaluation. Olin-Br.17. EPA says this just means notice about what EPA thinks the conditions of use are, in a whole-chemical evaluation addressing all of them. Opp.33. That view renders "expects to consider" superfluous. If EPA must address all a chemical's conditions of use in a single evaluation, the only question is what those conditions of use actually are—a judgment already prescribed by 15 U.S.C. § 2602(4). Paragraph (b)(4)(D) only needed to require notice of the "conditions of use." To have any meaning, the additional phrase "expects to consider," necessarily implies EPA decides which conditions of use a given evaluation will cover.

Paragraph (b)(4)(F)(v) requires EPA to describe the "evidence for the identified hazard and exposure." Olin-Br.17. EPA says "exposure" is a "term[] of art," Opp.53—a proposition for which it provides no support—but does not explain why that would matter. EPA cannot deny that paragraph (b)(4)(F)(v)

9

ties each evaluation to a given hazard; the hazard results from an exposure, and the exposure arises from a particular activity.

## II.   EPA'S PRESUMPTION AGAINST PPE IS UNLAWFUL.

Facial challenges to rules are "presumptively" ripe. *Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119 (D.C. Cir. 2005). EPA asserts Olin's challenge about PPE is not, because an as-applied challenge would be possible later. Opp.60. That is true for every facial challenge—the Supreme Court long ago rejected that sort of argument. *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).

EPA offers no analysis under this Court's standard for determining ripeness: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Assoc. of Mfrs. v. Dep't of Interior*, 134 F.3d 1095, 1119 (D.C. Cir. 1998). The challenge here is "purely legal," *Abbott Labs.*, 387 U.S. at 149, namely whether EPA can validly demote PPE below other conditions of use by a special presumption of non-use. *National Association of Manufacturers* addressed challenges to a rule allowing an agency to calculate natural-resource damages using "combined Type A and Type B procedures." 134 F.3d at 1119. *General Electric Company v. Department of*

*Commerce* reviewed a rule permitting the use of "contingent valuation" in a certain assessment process.   128 F.3d 767, 772 (D.C. Cir. 1997).   The presumption against PPE in risk evaluations is more concrete than those issues.

The hardship to Olin from not addressing this issue now is manifest. EPA has ongoing risk evaluations, under the Risk Framework Rule, for chemicals Olin manufactures.   Olin and other commenters must spend substantial resources proving—to EPA's startlingly high evidentiary bar— PPE is used in a given activity.  Olin-Br.19.

On the merits, EPA insists it considers available information in each risk evaluation. But that avoids the issue. EPA denies it makes "assumptions." Opp.78.   Actually, a typical risk evaluation includes an entire section discussing EPA's "key assumptions" for the given evaluation.   Methylene Chloride Final Risk Evaluation (2020) at 428, JA__.  EPA's brief reveals EPA's one-sided attitude about assumptions:   EPA will "take into account … reasonably foreseen circumstances where … workers are exposed due to the absence or ineffective use of [PPE]." Opp.73.  Thus EPA is willing to

11

make assumptions ("reasonably foreseen") of "absence or ineffective use," but rejects assumptions of presence or effective use. Refusing to ever make assumptions in favor of PPE simply shifts the burden of proof and persuasion on this issue. "[A]ssigning the burden of proof is not a magic wand that frees an agency from the responsibility of reasoned decisionmaking." *Kansas Gas & Elec. Co. v. FERC*, 758 F.2d 713, 721 (D.C. Cir. 1985). By stating "EPA will not consider exposure reduction based on assumed use of [PPE]," 89 Fed. Reg. at 37,055 (codified at 40 C.F.R. 702.40(f)(2)), EPA required proof from any person believing PPE should be part of the conditions of a given use.

EPA tries to distinguish *Maine Lobstermen's Association v. National Marine Fisheries Service*, 70 F.4th 582 (D.C. Cir. 2023), on grounds that EPA is not using "worst case scenario[s]." Opp.85. That case's true lesson is that when an agency must use the "best available" evidence—as EPA must under TSCA, the agency cannot "merely presum[e] that unavailable data, if only they could be produced, would weigh" in one direction or another. 70 F.4th at 599. An agency must not "jump to a substantive presumption that distorts the analysis of effects and creates false positives." *Id.* at 600. That is what EPA

12

did.  There will be many circumstances where, on a case-by-case basis, an assumption of PPE use is well-justified.   Yet the Risk Framework Rule commits EPA not to account for PPE use unless the evidence shows, for example, that "performance of a condition of use is impossible in the absence of PPE."  Response to Comments at 31, JA__.  That is a different and higher burden than for any other condition of use.

EPA says the record shows "noncompliance [with PPE requirements] does occur."  *Id.*; Opp.71.  That is not enough.  "[A]n evidentiary presumption is 'only permissible if … proof of one fact renders the existence of another fact so probable that it is sensible and timesaving to assume the truth of [the inferred] fact.'"  *Nat'l Mining Assoc. v. Dep't of Interior*, 177 F.3d 1, 6 (D.C. Cir. 1999).  *National Mining* invalidated a presumption that 10% ownership of a company constitutes control.  "While ten per cent ownership may, under specific circumstances, confer control, [the agency] cited no authority for the proposition that it is *ordinarily likely* to do so."  *Id.* at 6-7 (emphasis added).  Similarly, that some employers have violated PPE requirements falls far short

of showing workers are "ordinarily likely" to be without PPE, as would be necessary to justify EPA's presumption against PPE use.

## III.    INCLUDING "OVERBURDENED COMMUNITIES" WAS UNLAWFUL.

EPA does not dispute that "overburdened communities," as defined in the Rule, are not "potentially exposed or susceptible subpopulations" as TSCA uses that phrase. Olin-Br.22-23; Opp.87-88. EPA protests it will also consider other subpopulations, Opp.87-88; but accounting for those other groups does not make "overburdened communities" a valid consideration. EPA also denies it committed to considering overburdened communities. EPA simply claims discretion to consider any subpopulations the Rule describes. Opp.87-88. Actually, the Rule says EPA "will" consider the risks to "potentially exposed or susceptible subpopulations"—a term the Rule defines to include "overburdened communities." 40 C.F.R. 702.39(e)(1), 702.33. "Will" is a "term[] of command." *Am. Business Assoc. v. United States*, 627 F.2d 525, 532 (D.C. Cir. 1980). The Rule itself promised away EPA's asserted discretion.

14

Olin's challenge is ripe, for the same reason. The Rule spells out EPA's commitment to account for "overburdened communities." Whether that is valid is a purely legal question. And Olin, as a participant in ongoing risk evaluations, needs to know whether it must develop evidence not just about communities with different exposures to a given substance, but also about those with "lack of opportunity for public participation," 89 Fed. Reg. at 37,039. The stakes in risk-evaluation processes are massive; these are, as EPA says, the "toll gate" for crushing TSCA regulation. How EPA carries them out is an issue ripe for resolution.

February 3, 2025                         Respectfully Submitted,

                                        /s/ Keith Bradley
                                        _____
                                        KEITH BRADLEY
                                        KAYLA MARIE MENDEZ
                                        717 17th Street, Suite 1825
                                        Denver, CO 80202
                                        T: (303) 830-1776
                                        keith.bradley@squirepb.com

                                        SAMUEL B. BALLINGRUD
                                        2550 M Street, NW
                                        Washington, DC 20037

                                        KATHERINE WENNER

2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
2550 M Street, NW
Washington, D.C. 20037
Tel: (202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for Olin Corporation*

16

## CERTIFICATE OF COMPLIANCE

This document complies with the Court's order filed on September 9, 2024, because this document contains 2,599 words as determined by the word-count function of Microsoft Office 365, excluding the parts of the document exempted by Federal Rule of Appellate Procedure P. 32(f) and Circuit Rule 32(e)(1),

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure P. 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Office 365 in 14-point Vollkorn Font.

*/s/ Keith Bradley*

Keith Bradley

17