Oral Argument Scheduled for March 21, 2025

**NO. 24-1151 and Consolidated Cases**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,**

*Petitioner*,

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY,**

*Respondent*.

_____

**LABOR PETITIONERS' OPPOSITION TO EPA'S MOTION FOR VOLUNTARY REMAND AND RENEWED MOTION TO HOLD CASE IN ABEYANCE**

Respondent Environmental Protection Agency ("EPA") is once again asking this Court to stay proceedings in these consolidated cases to enable the Agency to rethink its procedures for completing risk evaluations of toxic chemicals under the Toxic Substances Control Act ("TSCA"). 15 U.S.C. § 2605(b)(4)(B). The Court has already once declined to halt this case, which is fully briefed and on the verge of oral argument. Petitioners United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW"), International Association of Machinists and Aerospace Workers, AFL-

CIO, and Worksafe (collectively, "Labor Petitioners") strongly oppose EPA's motion.

As the Labor Petitioners explained in response to EPA's previous Motion to Postpone Oral Argument and Hold Case in Abeyance (Doc. 2098875), TSCA charges EPA to conduct risk evaluations to determinate whether a toxic substance presents an "unreasonable risk of injury to health or the environment," and if so, to develop risk management rules to eliminate that risk. 15 U.S.C. § 2605(a). The statute expressly required EPA to "establish, by rule, a process to conduct [its] risk evaluations" within one year after Congress amended the Act in 2016 by passing the Frank R. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114-182, 130 Stat. 448. 15 U.S.C. § 2605(b)(4)(B).

EPA initially complied with this mandate by establishing a framework for conducting its risk evaluations in 2017, under the first Trump Administration. EPA, "Procedures for Chemical Risk Evaluation Under the Amended Toxic Substances Control Act," 82 Fed. Reg. 33726 (July 20, 2017) ("2017 Framework Rule"). Various parties, including USW, the Alaska Community Action on Toxics, the American Chemistry Council ("ACC") and the Chamber of Commerce – all parties to this case – challenged the 2017 Framework Rule in the Ninth Circuit, where they fully briefed many of the same issues currently pending before this Court. *Safer Chemicals, Healthy Families v. EPA,* 943 F.3d 397 (9th Cir. 2019) (upholding the rules in part,

vacating in part, and declining to address other issues as not ripe). The Ninth Circuit declined to rule on the merits of several of the claims raised in *Safer Chemicals,* finding they were not ripe for review because EPA's rules were ambiguous and might not be applied as Petitioners feared.  *Id.* at 415-16.

EPA then applied some of the contested provisions in conducting its initial risk evaluations. Of particular concern to the Labor Petitioners, EPA adopted and applied a policy of assuming employees were using personal protective equipment ("PPE"), particularly respirators, when assessing occupational exposures. USW and various environmental groups filed opening briefs in one case in which EPA applied the 2017 Rule and its PPE policy in a specific risk evaluation, *Neighbors for Environmental Justice v. EPA,* No. 20-72091 (9th Cir.), and the United Auto Workers and the Alaska Community Action on Toxics were poised to file opening briefs in another such case, *Alaska Community Action on Toxics v. EPA,* No. 20-73099 (9th Cir.), when EPA agreed to reconsider its approach.

In 2024, the Biden Administration adopted a new set of rules, to "better align with the statutory text." "Procedures for Chemical Risk Evaluations under [TSCA]," 89 Fed.Reg. 37028 (May 3, 2024) ("2024 Rule"). Of particular relevance here, EPA revised three of approaches to evaluating risk: First, the 2024 Rule provided that EPA would "make a single risk determination on [a] chemical substance. . . , as opposed to individual risk determinations on each individual use of the chemical[,]" an approach

3

EPA believed "reflects a plain reading of the statutory text and structure." *Id.* at 37035. Second, the Agency would include all of a chemical's conditions of use in the scope of a risk evaluation, another revision EPA based on its view that this was a "better reading of TSCA's statutory text and structure" than its previous approach, which gave it authority "to exclude conditions of use from the scope of the risk evaluation." *Id.* at 37031. Third, EPA would no longer assume that workers were always provided with and appropriately used PPE, although the Agency would consider PPE "use that is supported by the reasonably available information and therefore known to be inherent in the performance of an activity." *Id.* at 37037. Finally, EPA added "overburdened communities" as an example of "potentially exposed or susceptible subpopulations," finding that Congress granted it discretion to add to the list of such subpopulations included in the statute. *Id.* at 37040. These are the four provisions at issue in these consolidated cases.

    EPA has now applied to this Court to hold the case in abeyance and to remand the 2024 Rule to permit the Agency once again to reconsider its approach to these provisions. EPA's Motion for Voluntary Remand and Renewed Motion to Hold Case in Abeyance (Doc. 2104767) at 1-2 ("Motion"). In its Motion, EPA asserts that a remand would allow the Agency to "reconsider certain legal and policy conclusions," to "advance the Administration's policy objectives." Motion at 7, quoting Beck Decl. ¶¶ 4-5.  Whatever the Administration's "policy objectives" may be, however, the

4

issues the parties have placed before the Court are pure statutory interpretation questions, which are for this Court to decide. Rather than sending the 2024 Rule back to the Agency for yet another reformulation, only to have the same legal issues presented once again to this or another court, this Court should deny EPA's motion, hold oral argument as scheduled on March 21, and finally resolve the fully-briefed statutory questions pending before it.

## ARGUMENT

EPA is entirely correct that "[a]gencies may reconsider past decisions and revise, replace or repeal a decision to the extent permitted by law and supported by a reasoned explanation." Motion at 5 (citations omitted). Indeed, nothing stands in the Agency's way of proposing a new rule and engaging in notice and comment rulemaking to replace the 2024 Rule with a new framework for assessing risk. It does not follow, however, that it is reasonable or appropriate for the Court to remand the 2024 Rule while EPA engages in this process.

### A. The Issues Before the Court are Strictly Questions of Statutory Interpretation

EPA is asking the Court to remand the 2024 Rule to enable it to engage in further rulemaking "in light of a change of administration and attendant change in policy priorities and approach to statutory interpretation." Motion at 7. In its Motion, the Agency identifies four specific issues it intends to reconsider: "the Agency's

5

approach to make a single risk determination for the chemical substance": the Agency's approach "requiring inclusion of all conditions of use in each risk evaluation"; "how it considers personal protective equipment when making risk determinations"; and "its decision to include 'overburdened communities' as an example in the definition of 'potentially exposed or susceptible subpopulations.'" *Id.* at 7-8. Whatever the Agency's policy objectives, each of these issues rests on an unresolved legal issue of what TSCA requires.

While EPA asserts that "*some* of the issues raised in the parties' briefing are questions of statutory interpretation," *id.* at 9 (emphasis added), in fact, *every one* of the issues EPA identified is currently before this Court on the parties' unanimous view that their resolution rests on interpreting TSCA. Thus, the Texas Chemistry Council, ACC, American Fuel & Petrochemical Manufacturers, and American Petroleum Institute ("Industry Petitioners") argue in their brief that "EPA's all conditions of use approach," its "whole chemical approach for risk determinations," and its "No-PPE assumption" are all "contrary to TSCA." Joint Opening Brief of Industry Petitioners (Doc. 2100888) at 11-12; *see also* Industry Petitioners' Reply Brief (Doc. 2100880) at 3, 10, 20 (all conditions approach, whole chemical approach, and treatment of PPE are unlawful under TSCA). Similarly, Intervenor-Petitioner Olin complains that the "whole chemical" approach violates TSCA, Olin Intervention Opening Brief (Doc. 2100771) at 8, and that EPA is exceeding its statutory authority

6

by including overburdened communities in the definition of "potentially exposed or susceptible subpopulations," Olin Reply Brief (Doc. 2100774) at 14.

The issue the Labor Petitioners raise is similarly grounded in TSCA's text: that the statute, by its terms, prohibits EPA from considering PPE in assessing risk. Labor Petitioners' Opening Brief (Doc. 2100704) at 18. Supporting EPA, Intervenor-Respondents Alaska Community Action on Toxics and the Sierra Club argue that the statute requires the Agency to consider all conditions of use, and that EPA's single risk determination and inclusion of overburdened communities are consistent with TSCA. Intervenor-Respondents Brief (Doc. 2100828) at 17, 33, 42.

Finally, EPA's response to each of the issues the Petitioners raise rests entirely on its own statutory interpretations. Thus, in defending the 2024 Rule, EPA has argued that including all conditions of use in its risk assessment and making a single-chemical determination reflect the "best reading[s] of the statute;" that TSCA requires the Agency to consider actual PPE use, but not to assume its universal use; and that TSCA grants the Agency the discretion "to include overburdened communities as an example in the definition of potentially exposed or susceptible subpopulation." EPA Answering Brief (Doc. 2100889) at 22, 42, 74, 79, 87.

In short, while the parties' views diverge on what the statute means, they are in total agreement that every one of the issues in this case rests on resolving their competing statutory interpretations. The Supreme Court has made clear that doing so

7

is "exclusively a judicial function." *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244, 2258 (2024), quoting *United States v. American Trucking Assns.,* Inc., 310 U.S. 534, 544 (1940). There are circumstances in which "the informed judgment of the Executive Branch . . . could be entitled to great weight," *id.* at 2259 (internal citations omitted), but this is not such a case. Nor, if the Court were to remand the Rule, would EPA's subsequent statutory interpretation be entitled to "great weight," as the "power" of an agency's views to persuade rests, in large part, on "its consistency with earlier and later pronouncements." *Id.*, quoting *Skidmore v. Swift,* 323 U.S. 134, 140 (1944). Here, where EPA is asking the Court for another opportunity to change its reading of TSCA on these very issues, having already done so at least once, its views would completely lack any power to persuade.

### B.  EPA Has Presented No Justification for Remanding the 2024 Rule

Where an agency's voluntary remand request is "associated with a change in agency policy or interpretation," and there is "an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a [particular] result, a reviewing court . . . has considerable discretion. It may decide the statutory question or it may order a remand." *SKF USA v. USA,* 254 F.3d 1022, 1029 (Fed. Cir. 2001).[1]

---

[1] In *SKF,* a pre-*Loper Bright* case, the court referred to this as a "step one *Chevron* issue," that is, one where the statute is clear and thus, no deference was owed the agency's interpretation. In light of the Supreme Court's *Loper Bright* decision, it is now up to the court, in every instance to say "what the law is." *Loper Bright,* 144 S. Ct. at 2272 (citation omitted).

8

EPA has provided no valid reasons why, rather than deciding the statutory questions, this Court should order a remand.

First, EPA asserts that it should be allowed to reconsider the 2024 Rule. Motion at 7. As already noted, nothing precludes the Agency from doing so, regardless of whether the Rule is remanded. Moreover, remanded or not, the 2024 Rule will remain in effect, and EPA will continue to apply it in conducting its risk evaluations, unless and until the Agency completes a new notice and comment rulemaking procedure. In other words, a remand will have no impact on either EPA's ability to engage in new rulemaking or its obligation to continue to adhere to the 2024 Rule in the meantime. The only difference is that an early decision by this Court could guide EPA in developing a new rule that will both advance its policy objectives and comply with the law.

Second, contrary to EPA's claim that a remand would promote judicial economy (Motion at 8), a remand would in fact burden the parties, who have already briefed the statutory issues at least three times in court and many more times in comments submitted to the Agency. The back and forth of commenting and briefing statutory questions again and again, without any judicial guidance as to the "best reading" of TSCA imposes an unwarranted burden on all parties. It guarantees that all parties will be back in court again, required to fully brief the same issues another time, while EPA's risk evaluations continue without any guidance on what the statute

9

requires. Thus, EPA's reconsideration of the 2024 Rule will neither resolve nor narrow the issues; it may simply cause the parties to switch sides. Nor will development of a "new and different record" have any impact on "subsequent judicial review." Motion at 8. Rather, the same statutory questions, which have never been squarely addressed, will continue to shadow EPA's rulemaking, as well as the risk evaluations it has conducted and will continue to conduct until these issues are resolved.

In this respect, the issues here are unlike those in the cases EPA cites, where this Court granted remands when there was a real possibility that the agency would either resolve or significantly change the nature of the pending dispute. In *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993), for example, this Court granted EPA a voluntary remand to permit the Agency to reconsider a decision based on newly available evidence. New factual findings are not going to affect the issues here. In *Cadillac of Naperville, Inc. v. NLRB,* 14 F.4th 703, 719 (D.C. Cir. 2021), this Court remanded a case to the NLRB to enable that agency to reconsider the case by applying new intervening law. Again, the only change EPA is seeking to apply in these cases is a change of policy, which may change the posture of the parties but will neither resolve nor significantly alter the nature of the issues before the Court.

EPA's own motion attests to the fact that rather than resulting in judicial economy, postponing resolution of the issues in this case is likely to result in a

10

proliferation of litigation and resulting prejudice to the parties. As long as the 2024 Rule is in effect, the Agency must follow it in conducting risk assessments. As EPA acknowledges in its Motion, parties that "contend they are harmed by the application of the 2024 Rule in any risk evaluation while EPA is reconsidering the 2024 Rule . . . can" – and we submit, *will* – "seek relief from such harm through judicial review of the chemical-specific actions." Motion at 11. In other words, continued application of the 2024 Rule will inevitably lead to chemical-by-chemical challenges in the courts of appeals – and there are likely to be many.

  The burden that delaying resolution of these issues will inflict on the parties is not limited to the investment of time and resources in litigating challenges to final rules. EPA currently has 23 chemicals undergoing risk evaluation and another five prioritized to enter the process. *See* EPA, "Ongoing and Completed Chemical Risk Evaluations under TSCA," https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/ongoing-and-completed-chemical-risk-evaluations-under (last accessed March 12, 2025). TSCA requires EPA to complete these evaluations, with opportunities for public comment and all on tight time frames. 15 U.S.C. § 2605(b)(4)(G) (setting deadlines for risk evaluations); *id.* § 2618 (making the deadline judicially enforceable). EPA is behind schedule in completing the mandated number of risk evaluations, and it recently entered into two consent orders setting strict deadlines for completing many risk evaluations, including a consent order with

the ACC, a petitioner in this case. *Community In-Power and Development Ass'n v. EPA*, No. 1:23-cv-02715-DLF (D.D.C.) Dkt. Nos. 39-40. Delaying a ruling on the statutory issues in this case increases the likelihood that EPA will be forced to redo these pending risk evaluations, causing delays in the risk evaluation process. This is exactly what Congress sought to avoid by establishing strict, judicially enforceable deadlines for risk evaluation and risk management in the 2016 amendments.

Moreover, reviewing and commenting on EPA's several hundred-page risk evaluations is a resource intensive effort for all parties. And because parties cannot bring challenges to an unreasonable risk determination until EPA issues its risk management rules, 15 U.S.C. § 2618(a) (authorizing review of either final risk management rules or orders issued under 15 U.S.C. § 2605(i)(1) finding no unreasonable risk), redoing a risk evaluation also potentially means redoing any subsequent risk management rule. Requiring all stakeholders to revisit the same statutory issues again and again as EPA's policy positions shift back and forth without judicial guidance on the validity of EPA's approach, increases the burden on the parties and the courts exponentially and will further delay long overdue protections from unreasonable chemical risks for workers and members of the public.

EPA is free to undertake a new rulemaking process and, "to the extent permitted by law," to revise its approach to risk assessment. Motion at 5. But it is up to this Court to interpret how TSCA applies to each of the issues the parties are

presenting. There is absolutely no reason to remand the Rule in the meantime and delay resolving the recurring issues that are currently before the Court.

### C. The Court Would not be Issuing an Advisory Opinion by Resolving these Cases

The Industry Petitioners argue that given the Agency's intention to revisit the 2024 Rule, any rulings in this case would constitute nothing more than an advisory opinion. Industry Petitioners' Reply in Support of EPA's Motion for Voluntary Remand (Doc. 2105457) at 3. They are wrong. Congress has directed EPA to determine whether toxic substances pose "unreasonable risk[s] of injury to health or the environment." The issues the parties have raised in these consolidated cases are fundamental to how Congress intended EPA to conduct its risk assessments.

The parties have fully briefed these statutory issues in these consolidated cases, which mirror those EPA intends to reevaluate. The issues have been joined. The Labor Petitioners agree with the Industry Petitioners that "it is improbable that the agency will simply readopt the Rule as currently written." Industry Reply at 4. But whether the Agency changes its views on what TSCA means is immaterial. Having now offered several interpretations of TSCA's requirements for risk evaluation, EPA's views are increasingly inconsistent and entitled to little or no deference under *Skidmore*. These consolidated cases present legal questions, which *Loper Bright*

13

instructs the Court to decide, and about which there is a live and concrete controversy for the Court to resolve. It is time for this Court to do so.

## CONCLUSION

The Labor Petitioners respectfully submit that the Court should deny EPA's Motion, hold oral argument as scheduled on March 21, and finally resolve the issues raised in these cases.

        Respectfully submitted,

        /s/Randy S. Rabinowitz
        Randy S. Rabinowitz, Esq.
        Victoria L. Bor, Esq.
        Occupational Safety & Health Law Project, LLC
        P.O. Box 3769
        Washington, D.C. 20027
        202/256-4080

# **CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it uses a monospaced typeface and contains 3137 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point typeface using Time New Roman font.

Dated:   March 14, 2025
         Washington, D.C.

/s/ *Victoria L. Bor*
*Attorney for Labor Petitioners*

# **CERTIFICATE OF SERVICE**

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on February 11, 2025.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:   March 14, 2025
         Washington, D.C.

                                         /s/ *Victoria L. Bor*
                                         *Attorney for Labor Petitioners*