

March 26, 2026

Office of the Clerk
United States Court of Appeals for the D.C. Circuit
333 Constitution Avenue, NW
Washington, DC 20001

**No. 24-1151,** *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO v. U.S. Environmental Protection Agency*

**Rule 28(j) Letter and Submission of Supplemental Standing Declaration**

In our opening brief, Labor Petitioners believed that it was self-evident that two industrial unions with more than a half million members represented workers exposed to toxic chemicals whose risks may be evaluated by EPA had standing.  At oral argument, members of the Panel questioned Labor Petitioners' standing and noted the absence of any standing declaration.  We urge the Panel to exercise its discretion, consistent with *Nat'l Council for Adoption v. Blinken,* 4 F.4th 106, 111 (D.C. Cir. 2021), to consider the attached declaration.

To establish organizational standing, USW must point to a "concrete and demonstrable injury to [its] activities" caused by agency action. *Equal Rts. Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). Once USW demonstrates that "the agency's action" will injure "the organization's interest," it must show that it used or will use "its resources to counteract the harm." *PETA v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015).

The Declaration outlines USW's advocacy for toxic chemical regulation in the workplace, and establishes that many of USW's members are exposed to chemicals whose risk evaluation is subject to the challenged Framework Rule. Decl. ¶¶ 8–13. If EPA is permitted to consider respirator use during risk-evaluation, USW will be obligated to conduct costly surveys of respirator usage across its local unions across the country, diverting staff resources from other union priorities. *Id.* ¶ 15.

(202)-256-4080

PO Box 3769, Washington, DC 20027

USW also has associational standing. *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015). USW members' health would be harmed by any underestimation of chemical exposure triggered by EPA's erroneous consideration of respirator use at the risk-evaluation phase and protecting members' health is germane to USW's purpose. Decl. ¶ 14.

Finally, we attach a copy of the AFL-CIO's comments on the Framework Rule describing the industries represented by various unions, including Petitioner USW. These comments, Exhibit 214 in the Administrative Record, were omitted from the Joint Appendix filed in this case.

/s/ Randy S. Rabinowitz
Randy S. Rabinowitz
randy@oshlaw.org
Counsel for Labor Petitioners



Oral Argument Held on March 21, 2025

---

No. 24-1151 and Consolidated Cases

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

### UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,

Petitioners,

v.

### UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

Respondents,

---

## DECLARATION OF STEVEN SALLMAN

I, STEVEN SALLMAN, declare as follows:

1. I am Director of Health, Safety and Environment at the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW), formerly known as the United Steelworkers of America. I first joined USW in 2004 as a Technician.

2. My Department includes staff who conduct workplace inspections, are involved in advocacy, and respond to inquiries from members in workplaces across the country who raise questions about health and safety. In this capacity, the Department monitors regulatory developments affecting chemicals to which our members are exposed and actively participates in regulatory proceedings affecting such chemicals.

3. I have worked in the USW Health, Safety and Environment Department for over 21 years, and have 33 years of safety and health experience. I have investigated over 100 fatalities and hundreds of life-altering incidents, assist local unions, and work closely with other unions, as well as employers' safety and health staff. I worked at the USW represented Firestone Plant in Des Moines, Iowa, for 13 years; where I served as the fulltime Health, Safety and Environment Committee Chairman for Local 310L for eight years. My professional experience includes working at the Iowa Division of Labor-OSHA for almost five years as a Safety and Health Consultant. A member in the

1

National Advisory Committee for Occupational Safety and Health, a federal advisory committee established by the Occupational Safety and Health Act (OSHA), from 2019 through 2021; I served as an expert for Workers' Group, a tripartite group of the International Labour Organization's Code of Practice on Safety in the Use of Machinery, November 29 – December 7, 2011.

4.    USW is the authorized collective bargaining agent for over 500,000 North American workers, including a majority of unionized workers in the rubber, chemical, petroleum, paper, metal and mineral mining (other than coal) and general manufacturing industries. USW represents thousands of workers who are exposed to toxic chemicals currently undergoing review, or which may in the future be prioritized for review, by the Environmental Protection Agency (EPA) under the Frank R. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114-182, 130 Stat. 448, 462–63 (2016)(TSCA). USW has long been committed to the health and safety of our members, their families, and the communities in which their workplaces are located. USW is dedicated to protecting and maintaining safe working conditions for individual members.

5.    Toward that end, USW actively participated in the legislative debates leading to passage of the 2016 revisions to TSCA, has filed comments on several rulemakings and risk evaluations under TSCA, including those for methylene

chloride risk, asbestos, trichloroethylene, carbon tetrachloride and several others and was a petitioner in litigation over EPA's Risk Evaluation Rule.

6. Occupational safety and health are a mandatory subject of bargaining, as defined by the National Labor Relations Act. USW has an extensive safety and health program, centered on union safety and health representatives at the plant level, and backed up by a professional headquarters staff. USW expects to rely upon the risk evaluations currently being developed by EPA to aid it in fulfilling its collective bargaining mission to negotiate over terms of employment, to advocate for safer working conditions that reduce the potential for exposures to harmful chemicals, and to work with employers to set priorities for toxic chemical control. We have a keen interest in the ability of the government to determine whether the chemicals to which our members are exposed pose unreasonable risks to their health. Risk evaluations completed by EPA will allow USW to alert our members to the occupational risks they face, to bargain with employers to protect our members from those risks, and to advocate for federal and state regulatory agencies to adopt greater protections for our members from the risks of toxic chemicals.

7. In my capacity as Director of Health, Safety and Environment for USW, it is my responsibility to be aware of, and monitor regulatory developments affecting, toxic chemicals to which USW members are exposed. To do so, I communicate with USW members, local union leaders, and members of health and

3

safety professionals on USW's staff regularly about toxic exposures in workplaces represented by USW and regularly conduct worksite visits to personally observe the working conditions USW members face. In my 21 years working for USW's Health, Safety and Environment Department, I estimate that I have conducted around one thousand site visits to USW-represented workplaces and personally observed the working conditions facing USW members.

8.     Based on this experience, I am aware that USW members are exposed to several chemicals, described more fully below, that were evaluated under the prior "Procedures for Chemical Risk Evaluation Under the Amended Toxic Substances Control Act," 82 Fed. Reg. 33,730 (June 2017). Among those are asbestos and methylene chloride.

9.     Asbestos is one of the ten chemicals EPA designated for its initial review under the Risk Evaluation Rule. In the past, asbestos was widely used in insulation, pipe lagging, gasket material, sealants, fire retardants, building materials and even in work clothing. While these uses have mostly ceased with regard to new materials and construction, a great deal of asbestos remains in place, and can expose workers when equipment or structures are demolished, repaired or refurbished.

10.     USW is the authorized collective bargaining representative for workers in four facilities EPA has identified as manufacturing methylene chloride and one where EPA has identified this facility as one which processes methylene chloride as a reactant.

11.  EPA has recently completed risk evaluations for formaldehyde. USW represents workers in at least two dozen bargaining units where workers are exposed to formaldehyde. EPA's draft risk evaluation of 1,3 butadiene is currently undergoing peer review. USW members work in rubber manufacturing where 1,3 butadiene exposure is common.

12.  USW members are also exposed to several chemicals that are currently undergoing risk evaluation by EPA and which will be evaluated based on the criteria in EPA's Final Rule "Procedures for Chemical Risk Evaluation Under the Amended Toxic Substances Control Act" (Risk Evaluation Rule), 89 Fed. Reg. 37028 (May 3, 2014), now subject to judicial review in this Court. USW believes that EPA's Risk Evaluation Rule impermissibly permits EPA to consider respirator use in evaluating occupational exposure.

13.  Based on information from our local unions and international staff representatives, we estimate that USW members at four bargaining units are exposed to dibutyl phthalate; five bargaining units are exposed to di-ethylhexyl phthalate; and nine bargaining units are exposed to phthalic anhydride. EPA has also announced that it will evaluate the risks of vinyl chloride and acrylonitrile next. Based on my personal experience and knowledge at USW, I am aware that USW members are exposed to both chemicals in a number of bargaining units, although we have not yet determined how many bargaining units are affected.

14.    USW has for decades advocated against reliance on personal protective equipment, particularly respirators in evaluating risk to workers. When exposure measurements are reduced by perceived effectiveness of respirators, regulators inevitably underestimate worker exposure. As a result, if, contrary to the best available science and established practice in the occupational safety and health field, EPA were to take information about respirator use into account at the risk-evaluation phase, it would erroneously determine that certain chemicals—or certain conditions of use of chemicals—did not pose an unreasonable risk to our members' health and safety. Because EPA cannot implement risk management protections absent a finding of unreasonable risk, the result would be less protection and greater exposure to toxic chemicals for our members on the job, with serious long-term effects on their health and quality of life.

15.    Additionally, USW would have to expend divert significant resources to defend its members' interests under the current Framework rule, which permits EPA to consider the use and effectiveness of respirators in completing risk evaluations. USW believes that to effectively advocate before EPA against taking respirators into account, USW will have to survey its local unions and international staff on the respirator practices at facilities where USW members work. Undertaking such a survey of USW member respirator practices would require a significant expenditure of limited staff resources by my Department.

16.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on 25th day of March, 2025.

Steven Sallman

**COMMENTS ON EPA'S PROPOSED RULE ON PROCEDURES FOR CHEMICAL RISK EVALUATION UNDER THE TOXIC SUBSTANCES CONTROL ACT (TSCA) ID: EPA-HQ-OPPT-2023-0496-0001**

**December 14, 2023**

These comments are submitted jointly by the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), North America's Building Trades Unions (NABTU), the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW). The AFL-CIO is the federation of 60 national and international labor unions representing 12.5 million working people across a wide variety of industries. NABTU is a labor organization representing more than 3 million skilled craft professionals in the United States and Canada and is composed of fourteen national and international unions and over 330 provincial, state and local building and construction trades councils. The UAW represents more than 1 million active and retired members in North America, with members in virtually every sector of the economy, including multinational corporations engaged in manufacturing, small manufacturers, state and local governments, colleges, universities, hospitals, and private non-profit organizations. The USW is North America's largest industrial union, representing 1.2 million members and retirees in many industries throughout the United States, Canada, and the Caribbean.

These comments address EPA's proposed revisions to the "Procedures for Chemical Risk Evaluation under the Toxic Substances Control Act."[1] They focus on aspects of EPA's proposal that directly affect workers and about which we have the greatest experience and expertise after decades of investigating occupational health and safety hazards on behalf of our members and of participating in Occupational Safety and Health Administration and National Institute for Occupational Safety and Health research, regulatory and enforcement efforts. We also include comments on issues that have been addressed by unions in *Safer Chemicals v. EPA,* No. 17-72260 (9th Cir.) and *Neighbors for Environmental Justice v. EPA,* No. 20-72091 (9th Cir.). We leave it to others to address issues raised by the proposal which do not uniquely affect workers in their workplaces.

I.      **EPA Must Make Risk Determinations Without Considering PPE Use**

Our comments focus principally on EPA's practice, prior to June 2021, to "assume[] that workers were always provided and appropriately used PPE,"[2] based on the false premise that

---

[1] 88 Fed. Reg. 74292 (October 30, 2023).
[2] *Id.* at 74294.

OSHA regulations "might" require PPE use. We have argued in our comments on numerous other EPA proposals that such an approach was contrary to the requirements of TSCA, inconsistent with the "best available science," contrary to established OSHA and NIOSH practice, and lacking factual support. Assuming the use of PPE in analyzing risk was unprecedented; no Federal agency risk evaluation of occupational exposures has ever done so.

EPA has now proposed to adopt 40 CFR 702.39(f)(2), which provides:

> In determining whether unreasonable risk is presented, EPA's consideration of occupational exposure scenarios will take into account reasonably available information, including known and reasonably foreseen circumstances where subpopulations of workers are exposed due to the absence or ineffective use of personal protective equipment. EPA will not consider exposure reduction based on assumed use of personal protective equipment as part of the risk determination.[3]

EPA must make risk determinations without regard to PPE use. We fully support EPA's decision not to *assume* the use of PPE in making a risk determination. Neither should EPA consider PPE use "when it has reasonably available information" on PPE.[4] Thus, EPA should eliminate the first sentence of proposed 702.39(f)(2). This sentence implies that there is some universal duty to provide PPE to workers at all exposure levels and that "unreasonable risk" results only when subpopulations do not use PPE or use it ineffectively. This assumption is wrong. No requirement exists to provide PPE to workers at the levels of exposure EPA is evaluating. Accepted industrial hygiene practice, as well as OSHA regulations, require that worker exposures be measured, and risk determined, without regard to respirators.

TSCA requires that EPA ignore the effect of PPE in assessing risk. PPE should be considered during risk management as a possible exposure control measure in combination with other control measures.

## A. TSCA Prohibits EPA From Considering PPE in Risk Evaluation.

EPA's assumptions about PPE use run counter to Congress's deliberate separation of the risk-evaluation and risk management processes. TSCA Section 6(b) provides that EPA "shall conduct risk evaluations … to determine whether a chemical substance presents an unreasonable risk of injury to health or the environment . . . ."[5] Only after completing a risk evaluation and determining that a chemical presents an unreasonable risk may EPA assess its options for

---

[3] *Id.* at 74322.
[4] *Id.* at 74305.
[5] 15 U.S.C. § 2605(b)(4)(A).

managing that risk pursuant to Sections 6(a) and 6(c).[6] Those sections provide that EPA "shall consider" multiple risk management tools pursuant to factors prescribed in the statute, and "shall… apply one or more" of those tools "so that the chemical… no longer presents [unreasonable] risk."[7]

Congress separated risk management from risk evaluation to ensure that the agency makes its determination of whether a chemical poses unreasonable risk based only on health and environmental effects.[8] Decisions about how to control that risk, which necessarily implicate "costs [and] other non-risk factors," can be made only during risk management.[9] EPA's prior assumption of widespread PPE use impermissibly conflated risk evaluation with risk management; its proposed regulation would fix that error. However, EPA should not take even "reasonably available information" about PPE use into account in assessing risk.

"Respirators are protective equipment" used to limit worker exposures.[10] It is the least effective method of controlling occupational exposures and represents the lowest rung on the hierarchy of controls. Were EPA to consider PPE use during risk evaluation, it would underestimate the risks workers face and bypass the analysis required during the risk management process of what regulatory approach best eliminates the unreasonable risk posed to workers. If EPA assumes PPE use it would impermissibly be selecting a risk management approach in the Risk Evaluation itself—without comparing the relative efficacy of PPE to other potential control methods, and without any mechanism for ensuring that the assumed PPE would actually be provided and used. Besides, EPA has repeatedly emphasized the limits of the protection afforded by respirators.[11]

### B. The Best Available Science Requires EPA To Ignore PPE Use in Risk Evaluation.

The best available science, and established OSHA regulatory policy, require that occupational exposure be measured without regard to respirator use. EPA's earlier assumption of widespread PPE use, therefore, violated TSCA's requirement, applicable to both risk evaluation and risk management, that EPA use "methods, protocols [and] methodologies… in a manner consistent with the best available science."[12]

---

[6] *Id.* § 2605(a), (c)(2).
[7] *Id.*
[8] *See id,* § 2605(b)(4) (prohibiting EPA from considering "non-risk factors" in risk evaluations).
[9] *Id.* § 2605(b)(4), 2605(c)(2) (requiring EPA to consider the "the costs and benefits" of different regulatory options before issuing a risk management rule).
[10] *Sec'y of Labor v. Seward Ship Drydock,* 937 F.3d 1301, 1303 (9th Cir. 2019).
[11] *See e.g.,* 88 Fed. Reg. 28319 (methylene chloride risk management proposal); 88 Fed. Reg. 49207 (carbon tetrachloride risk management proposal); 88 Fed Reg 39691 (perchloroethylene risk management proposal).
[12] *Id.* § 2625(h).

Core industrial hygiene principles require the measurement of worker exposures, and hence risk, without regard to PPE use, so that PPE can be considered along with other, preferred forms of risk management pursuant to the "hierarchy of controls." This hierarchy, which "has been established industrial hygiene practice since the 1950s," prioritizes chemical elimination, substitution, engineering controls, and administrative controls over the use of PPE, and prohibits employers from relying on PPE until they have exhausted those preferred options.[13] OSHA has incorporated the hierarchy of controls into virtually every health standard it has issued.[14]

EPA's proposed revised Framework rules would codify long-standing industrial hygiene practice of measuring risk without regard to PPE use. Both OSHA and NIOSH have repeatedly told EPA that the assumption that all workers wear PPE is flawed. In commenting on EPA's initial draft methylene chloride risk evaluation, for example, NIOSH advised that "[i]n occupational risk assessment, risk should be calculated without regard for respiratory protection. This encourages use of the hierarchy of controls, long-standing industrial hygiene best practice." OSHA advised EPA that respirators are required only when exposures exceed the Agency's exposure limits. We attached several of these comments by OSHA and NIOSH to comments on EPA's earlier TSCA proposals; we do so again now. EPA's proposed revision to the Framework rule foreswearing reliance on PPE in assessing risk is consistent with the views NIOSH and OSHA have expressed. We urge EPA to place the comments it has received from both agencies on various risk evaluations in the public docket.

What is more, the effect of PPE use cannot be measured. Sampling devices cannot be attached inside a respirator's face piece. Standard industrial hygiene practice requires that employee exposure be measured without regard to PPE use. Every OSHA comprehensive OSHA health standard defines employee exposure as the monitored level of chemical in an employee's breathing zone, without regard to respirator use.[15] Indeed, we are unaware of any prior Federal occupational risk assessment that assumed the use of PPE in characterizing worker exposure. EPA's prior assumption of widespread respirator use was an unprecedented effort to artificially reduce the exposure dose evaluated. EPA is correct to abandon the earlier approach.

---

[13] *See* 62 Fed. Reg. at 1582 (Description of hierarchy of controls in OSHA's methylene chloride standard).

[14] Most OSHA health standards include a section titled "methods of compliance" and this section routinely requires employers to meet the OSHA PEL through reliance on engineering and administrative controls and permits respirator use only when other controls are not feasible. *See e.g.,* 29 CFR 1910.1001(f)(asbestos); 29 CFR 1910.1017(f)(vinyl chloride); 29 CFR 1910.1025(e)(lead); 29 CFR 1910.1052(f)(methylene chloride).

[15] *See* 29 C.F.R. § 1910.1052(b); 29 C.F.R. § 1910.1001(b) (defining employee exposure in asbestos standard); *id.* § 1910.1025(d)(1)(i) (defining employee exposure in lead standard); *id.* § 1910.1048(b) (defining employee exposure in formaldehyde standard).

### C. OSHA Regulations Do Not Require PPE Use Below the OSHA Exposure Limit

EPA justified its earlier assumption of widespread PPE use by claiming that it "does not believe it should assume that workers are unprotected by PPE where such PPE *might* be necessary to meet federal regulations."[16] Even in its proposed revisions to the Framework rule, however, EPA continues to claim that it "is not suggesting there is widespread non-compliance with applicable OSHA standards."[17] The first sentence of proposed section 702.39(f)(2) implicitly continues the flawed assumptions that PPE may already be required or routinely used at EPA's exposure limits and that risk results only when PPE is not provided or used improperly.

But there is no legal requirement that employers provide PPE at the levels of exposure EPA is evaluating. As we explain below, no OSHA standard requires PPE under these circumstances. No evidence exists that most employers routinely provide such equipment. And, if they did rely primarily on respirators to protect workers, their actions would be incompatible with OSHA regulations that incorporate the hierarchy of controls. EPA must abandon the notion that there is some ongoing duty to protect workers from exposures below the OSHA PEL. There simply is none.

As OSHA has explained in its comments on EPA's proposed methylene chloride risk evaluation, "It is important to note that respirators are required only when concentrations will exceed the [OSHA] PEL." EPA has recognized the fact that there is a gulf between the exposures that OSHA regulates and those that EPA must regulate under TSCA.[18] Absent EPA action under section 6(a) of TSCA, employers have no duty to protect any workers from exposures between the levels OSHA regulates and the levels EPA finds present unreasonable risk.

The Occupational Safety and Health Act requires employers only to comply with OSHA standards, but not to exceed them.[19] Under most OSHA health standards, employers are required to reduce exposures to the OSHA permissible exposure limit (PEL) and to do so using engineering and work practice controls alone wherever feasible.[20]

---

[16] EPA Response to Comments on Methylene Chloride Risk Evaluation, EPA Document No. EPA-740-R2-0022 at p. 161 (emphasis added).

[17] 88 Fed.Reg. 74304.

[18] *See e.g.* "Trichloroethylene (TCE); Regulation Under the Toxic Substances Control Act (TSCA)," 88 Fed. Reg. 74712, 74719 (Oct. 31, 2023) (EPA believes that OSHA chemical standards would in general be unlikely to address unreasonable risk within the meaning of TSCA).

[19] 29 U.S.C § 654(a)(2); *see also* 62 Fed. Reg. at 1581 (requiring the use of respirators "only if occupational exposures [to methylene chloride] … are likely to exceed the … PEL"). *See also, Sec'y of Labor v. Seward Ships Drydock,* 937 F.3d 1301 (9th Cir 2019) (interpreting OSHA's respirator standard, 29 CFR 1910.134 as requiring protection when exposures exceed permissible levels).

[20] *See* n.13, *supra.*

OSHA has two types of standards that set PELs for toxic substances. In the first two years after passage of the OSH Act, section 6(a) of the OSH Act authorized OSHA to adopt existing consensus and established federal standards as OSHA standards without notice and comment. These 6(a) standards, many of which remain in effect today, were based on science from the 1960s or before and are widely viewed as woefully out of date.[21] Section 6(a) standards set exposure limits, but do not require exposure monitoring, medical surveillance, regulated areas, hygiene facilities or other ancillary protections for workers.

OSHA also has authority to issue comprehensive standards under section 6(b)(5) of the OSH Act and has issued approximately 40 such health standards since 1970.[22] To issue a standard under section 6(b)(5), OSHA must demonstrate that a toxicant poses a significant risk of material impairment of health or functional capacity, that reducing exposures will eliminate or reduce the significant risk, and that it is economically and technologically feasible for the affected industries to control exposures to the PEL.[23] OSHA has never adopted a health standard that fully eliminates significant risk—which OSHA defines as a risk of 1 in 1,000 workers—because feasibility constraints limit its ability to do so.

Nor does the general duty clause require employers to reduce exposures to the limits EPA considers unreasonable. EPA has correctly identified many of the obstacles OSHA would face if it tried to rely on the general duty clause to force reductions in chemical exposures.[24] Other obstacles exist as well. For example, OSHA regulations provide that where a specific standard already applies, the general duty clause does not.[25] OSHA has advised its inspectors that "section 5(a)(1) shall not normally be used to impose a stricter requirement" than required by an OSHA PEL.[26] Further, to establish a general duty clause violation, OSHA must show that reducing exposures below its PEL is feasible,[27] which—in promulgating its 6(b)(5) standards—OSHA has already determined it is not. Finally, an analysis of the few recent general duty clause citations OSHA has issued for chemical exposures reveals that none were simply for exposures above an occupational exposure limit, but instead, were issued only where exposures led to clinical health effects, most with symptoms of acute onset within a brief period of time after exposure, and not chronic conditions.[28] These factors make it entirely unrealistic that OSHA could,

---

[21] 29 USC 655(a); See discussion of OSHA standard setting at 88 Fed. Reg. 28288 (Risk Management Proposal for Methylene Chloride).

[22] 29 USC 655(b)(5).

[23] See *American Textile Mfrg. Inst. v. Donovan,* 452 US 490 (1981).

[24] 88 FR 28288.

[25] See 29 U.S.C § 654(a)(1); 29 C.F.R. § 1910.5(f). See also, *Chewy, Inc v. Dep't of Labor,* No 19-0868 (11th Cir. 2023).

[26] OSHA Regulatory Directive, *Inspection Procedures for the Respiratory Protection Standard* at 5 (June 2014), https://www.osha.gov/OshDoc/Directive_pdf/CPL_02-00-158.pdf.

[27] *National Realty v. OSHA,* 489 F.2d 1257 (D.C. Cir. 1973).

[28] AFL-CIO, *Death on the Job* at 141 (2023), available at https://aflcio.org/reports/death-job-toll-neglect-2023.

or would, rely on the general duty clause to force exposure reductions to the levels EPA identifies as posing an unreasonable risk.

In support of EPA's earlier assumption about PPE use, some pointed to OSHA's Respiratory Protection standard.[29] This standard governs the protocol employers must follow to protect employees from "hazards," which OSHA defines as exposures above an OSHA PEL.[30]

OSHA's respiratory protection standard does not require employers to comply with risks identified by other federal agencies. Nor does it impose a duty to protect workers from exposure above the level another federal agency or organization *recommends*. OSHA's proposed respiratory protection standard would have required employers to implement the hierarchy of controls, even if OSHA had not adopted a PEL for a chemical, if exposures exceeded either a NIOSH Recommended Exposure Limit (REL), an American Conference of Government Industrial Hygienist (ACGIH) Threshold Limit Value (TLV) or *"any exposure level based on available scientific information, including Material Safety Data Sheets."*[31] Had OSHA adopted its proposal, an EPA determination of unreasonable risk might have triggered a duty to comply with OSHA's respiratory protection standard.[32]

OSHA rejected that approach when it issued its final respiratory protection standard and, in doing so, made clear that the standard "does not identify the ACGIH TLVs or the NIOSH RELs as references that would trigger required respirator use."[33] Since OSHA considered and rejected an approach that would have triggered the respirator standard based on "available scientific information," such as an EPA finding of unreasonable risk, EPA's assumption that the respirator standard *might* apply is plainly wrong – and OSHA has told EPA as much.

Nor are employers required to follow suggested precautions included in a safety data sheet. OSHA's Hazard Communication standard requires chemical manufacturers to prepare safety data sheets (SDSs) advising of a chemical's hazards and recommended methods for hazard control. But OSHA has made clear that "*there is no requirement for employers to implement the recommended controls*" on an SDS (emphasis added).[34] Even if there were such a requirement, the health effect warnings and suggested hazard control methods included on SDSs vary widely, and EPA has no information to indicate these suggestions mirror the steps necessary to eliminate unreasonable risks.

[29] 29 CFR 1910.134(a).
[30] *See Sec'y of Labor v. Seward Ships Drydock,* 937 F.3d at 1308. OSHA made the same point in its comments on the methylene chloride risk evaluation.
[31] 63 Fed. Reg. 1152, 1183 (Jan. 8, 1998) (emphasis supplied).
[32] Obviously, if OSHA regulations do not require employers to implement controls based on a finding of unreasonable risk in a final risk evaluation, then they do not impose such a requirement based on a draft risk evaluation. So, EPA has no basis for assuming those controls are already in place when estimating risk.
[33] *Id.*
[34] Hazard Communication, 77 Fed. Reg. 17,574, 17,693 (Mar. 26, 2012).

In short, OSHA's respirator standard requires employers to control "hazards"—defined by the PEL—following the hierarchy of controls and utilizing PPE only as a last resort. As EPA has recognized in several proposed risk management rules, an unreasonable risk under TSCA is not necessarily a "hazard" under OSHA regulations.[35] And indeed, EPA has found that each of the toxicants it has evaluated thus far poses unreasonable risks at levels orders of magnitudes lower than OSHA's PELs. Therefore, there is no basis for assuming that employers in full compliance with either OSHA's health standards or its respirator standard use PPE to reduce exposure below a PEL, and certainly not to the exposure levels which EPA finds pose unreasonable risk.

### D. EPA Can Reasonably Forsee That Many Workers Are Not Protected From Unreasonable Risks.

EPA must evaluate risks posed by a chemical's "conditions of use," which TSCA defines as "the circumstances, as determined by the Administrator, under which a chemical substance is intended, known, or reasonably foreseen to be manufactured, processed, distributed in commerce, used, or disposed of."[36] We have no doubt that some employers have adopted internal guidelines that require exposure reduction beyond the levels mandated by OSHA standards. While efforts to reduce exposures beyond what OSHA requires are commendable, these policies by individual employers are not universal and they are voluntary, not mandatory.

Voluntary compliance efforts cannot be enforced; they can be dropped at any time. EPA has repeatedly noted that "it does not question public comments" indicating some employers have reduced exposures to levels below the OSHA PEL, but that observation is meaningless from either a risk assessment or regulatory perspective. EPA cannot meet the requirements of TSCA Section 6—to eliminate unreasonable risk—by pointing to unenforceable, voluntary efforts by some, but not all, employers. It is reasonably foreseeable that many workers will not be effectively protected by voluntary internal guidelines adopted by some employers.

Moreover, when employers voluntarily choose to reduce exposures below the PEL, many do so by insisting that workers wear respirators, rather than relying on engineering solutions to reduce exposures. Reliance on respirators to protect workers from chemical exposures is not an effective alternative to engineering or other controls, which is why it is at the very bottom of the hierarchy of controls. Therefore, it is also reasonably foreseeable that PPE will not effectively eliminate the unreasonable risk workers face.

---

[35] *See e.g.,* 88 Fed. Reg. 74719.
[36] 15 U.S.C. § 2602(4).

OSHA has consistently found respirators to be unreliable as protection against harmful chemicals, warning that respirators are "uncomfortable to wear, cumbersome to use, and interfere with communication in the workplace, which can often be critical to maintaining safety and health."[37] Courts have upheld OSHA's findings that respirators are "woefully inadequate" to protect workers due to "problems with adequate facial fit, increased heat stress, reduced vision, increased breathing resistance, speech limitation, limited mobility, and excess weight."[38] EPA has previously acknowledged that "not all workers may be able to wear respirators," or to wear them safely and effectively.[39] In its proposed ban on methylene chloride's paint-stripping uses, EPA declined to rely on respirators precisely because workers with impaired lung function— such as those with asthma, emphysema, and chronic obstructive pulmonary disease—"may be physically unable to wear a respirator," and workers with facial hair "cannot wear tight-fitting respirators" that require a face-to-respirator seal.[40] EPA has repeated these observations in several proposed risk management rules. In other words, the assumption that principal reliance on PPE is an effective method of control for all workers is never a "best practice."

Even if respirators are being used to reduce exposures below the OSHA PEL, we doubt EPA has any data to show that employers requiring respirator use comply with OSHA requirements for periodic fit testing, medical testing, and employee training.[41] Indeed, OSHA's respiratory protection standard is among the most frequently cited OSHA standard, indicating that violations are common.[42] Absent such fit testing and other procedures, the protection factor assigned to a respirator under laboratory conditions is higher than the actual protection provided in a factory or on a construction site, where working conditions are less than perfect. For all these reasons, NIOSH advised EPA, in commenting on its initial methylene chloride risk evaluation, that "it is not plausible to assume" that workers are protected by respirators.

E. **There are No Circumstances Under Which EPA Should Take Respirators Into Account in Assessing Risk**

The first sentence of proposed section 702.39(f)(2) provides that EPA "will take into account reasonably available information including known and reasonably foreseen circumstances where subpopulations of workers are exposed due to the absence or ineffective use of personal protective equipment." The preamble explains that "[w]here information is made

---

[37] 62 Fed. Reg. at 1583. *See also* Occupational Exposure to Asbestos, Tremolite, Anthophyllite, and Actinolite, 51 Fed. Reg. 22,612, 22,693 (June 20, 1986) (describing the limits of respirator use); Occupational Exposure to Respirable Silica, 81 Fed. Reg. 16,286, 16,293 (Mar. 25, 2016) (describing how OSHA health standards generally rely on the hierarchy of controls and limit respirator use).

[38] *See also Pub. Citizen Health Rsch. Grp. v. U.S. Dep't of Lab.*, 557 F.3d 165, 179 (3rd Cir. 2009) (discussing why respirators are strongly disfavored).

[39] *See* 82 Fed. Reg. at 7481.

[40] *ASARCO v. OSHA*, 746 F.2d 483, 496 n.27, 497 (9th Cir. 1984).

[41] 62 Fed. Reg. at 1607, 1582.

[42] https://www.osha.gov/top10citedstandards

available, the Agency will take into account known occupational control measures in the exposure assessments."[43]

There are no circumstances when it is appropriate to take PPE into account when assessing exposure. The notion that consideration of PPE use is necessary to depict "real world" conditions is simply wrong.

As we have detailed above: employee exposure is routinely measured without regard to respirators; routine respirator use is neither required nor permitted under OSHA regulations or industrial hygiene practice; there is no practical means of measuring exposure with respirators in place since sampling devices cannot be placed inside a respirator facepiece; and without actual measurement data, fit testing, and other protections, there is no reason to believe that the actual protection provided by a respirator is the same as the assigned protection factor for that respirator.

Nor is there reason for EPA to suggest that somehow respirator use might be "inherent in the performance of an activity." Since OSHA regulations and industrial hygiene practice prohibit principal reliance on respirators to protect workers, routine respirator use is almost never a "best practice." The circumstances in which PPE use is inherent in an activity, therefore, are few and far between – perhaps only where an exposure may pose an imminent threat to life. Protecting workers from chronic or latent effects rarely involves such circumstances.

EPA can use "reasonably available information" about engineering and administrative controls, as well as documented PPE use, in making its risk management decisions. In doing so, however, EPA should not blindly accept industry assertions that workers are protected by PPE nor should it rely on exposure monitoring data that does not have adequate industrial hygiene notations accompanying it. Here, EPA should look to OSHA for guidance. OSHA has explained the types of data it finds persuasive in estimating exposures. According to OSHA, "the best evidence would be a data set that . . . was composed of comprehensive raw monitoring results over the last several years including monitoring results from tasks associated with higher exposure levels . . . ."[44] OSHA further explained that "a data set that included neither annotations, descriptions of existing controls, nor a site visit would be less useful," although these are often submitted to the record. OSHA does not consider data about PPE use relevant to evaluating exposures.

This is not to say that, in developing its risk management rules, EPA should ignore data illustrating the reductions in exposure that can be achieved through "employer best practices." Existing control strategies and industry best practices can illustrate feasible approaches to

---

[43] 88 Fed. Reg. 74305.
[44] 54 Fed. Reg. 29145 (July 11, 1989) (OSHA Lead Remand).

exposure control and help EPA identify the extent of exposure reductions these controls can achieve. Existing engineering controls will be reflected in monitoring data, so it is reasonable for EPA to consider process controls reflected in monitoring data."[45] When doing so, EPA should only consider fully documented monitoring results that are representative of the exposures in a condition of use.

While EPA can reasonably point to "employer best practices" during risk *management* to show the efficacy of its proposed workers control protection program, information on employer best practices should play no role in risk *evaluation*.

## II.     Other Issues Affecting Workers in the Framework Proposal

USW was a petitioner in the litigation over the existing Framework rules, *see Safer Chemicals v. EPA,* 943 F.3d 397 (9th. Cir. 2019), and the methylene chloride risk evaluation, *see Neighbors for Environmental Justice v. EPA*, No. 20-72091 (9th Cir.). In both cases, the USW joined environmental groups in arguing that several EPA interpretations of TSCA were invalid. We applaud EPA for recognizing that the Framework rules issued in 2017 were inconsistent with 2016 TSCA amendments and is now proposing to reverse these unwarranted interpretations of the 2016 TSCA amendments.

Each of the unions joining these comments shares the positions taken by USW and environmental groups in the briefs filed in each of the above-named cases. Many of EPA's proposed revisions mirror the interpretations of TSCA advanced by petitioners in these two cases. and which are detailed extensively in comments filed by Earthjustice *et al.,* in response to this proposal. Each union agrees with EPA's proposal to codify, in the revised Framework rules, the TSCA interpretations advocated by USW in those and others in the above-captioned cases. Specifically, the unions agree that:

- EPA must consider all "conditions of use" and lacks discretion to ignore known or reasonably foreseeable conditions of use. *See 88 Fed. Reg. 74296;*
- EPA must evaluate risks from all exposure pathways, including risks from "legacy exposures," risks posed by byproducts, and risks which could be, but are not, regulated under another statute. *See 88 Fed. Reg. 74298-99;*
- EPA must evaluate risks posed by, and make risk determinations for, "a chemical substance" as a whole. *See 88 Fed. Reg. 74294;* and
- While EPA may evaluate the risks posed by various conditions of use, it may not make risk determinations on a use-by-use basis. *See 88 Fed. Reg. 743074301-2.*

Two other issues bear mention. In its initial risk evaluations, EPA distinguished between workers who were directly exposed to a chemical and "occupational nonusers" or ONUs. ONUs

---

[45]  See 88 Fed. Reg 74299-300.

combined cleanup and other workers who might encounter exposures from working near a chemical user and service and maintenance workers who might have exposures on an intermittent basis, and each of these exposures should be assessed separately and indeed, both may have unreasonable risks. Neither OSHA nor NIOSH rely on this distinction of evaluating ONUs separately, and we have criticized it in several earlier comments. EPA has recognized that "while workers and occupational nonusers may have different exposure patterns, the level of exposures such that risks are no longer unreasonable is the same for both workers and occupational nonusers."[46] While EPA has ignored the distinction between these two groups in recent risk management proposals, it has continued this distinction in this proposed risk evaluation framework. We believe it should not do so. The distinction makes no sense. All workers exposed at the same level have similar risks—whether they directly handle a chemical on a regular or intermittent basis, or work near others who do so. Moreover, by eliminating its practice of evaluating risk, and making risk determinations, on a use-by-use basis, there is no longer even an arguable reason to maintain the distinction between workers and ONUs.

We agree with EPA that evaluating both aggregate and cumulative risks is important to gain a full picture of the risks posed by "a chemical substance." We are concerned however, that efforts to quantify such risks may extend the time it takes EPA to complete a risk evaluation and to make a risk determination. To date, occupational exposures have driven each of EPA's findings of unreasonable risk. And, in each case, the level of exposure EPA has found poses unreasonable risk is orders of magnitude below the level of OSHA regulation, illustrating the urgency of moving forward with risk management regulations to protect exposed workers. When EPA identifies unreasonable risk to workers, we urge it to move forward with risk management rules, even as it continues to evaluate aggregate and cumulative risks. Occupational exposure regulation should move forward even when EPA is not sure what risk management rules may be needed outside the workplace.

**Conclusion**

We strongly support EPA's proposal to codify its current practice and to prohibit the Agency from assuming respirator and other PPE use in assessing occupational risk and determining whether occupational exposures pose unreasonable risks. Its previous assumption of PPE use in assessing risk was unprecedented; the assumption is at odds with established industrial hygiene practice and OSHA's approach to regulation. We object to EPA's proposal nonetheless to consider PPE use in assessing risk when it has "reasonably available information" about such use. EPA may consider PPE use only during risk management. It should never do so when evaluating the risk to workers. The revision of this risk evaluation framework is critical to protect workers from chemicals in their workplaces and we commend EPA for moving forward with it.

---

[46] 88 Fed. Reg. 28292 (Risk Management Proposal for Methylene Chloride).